IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

LAUREL DIANNE BURNETTE,       )
                              )
      Plaintiff,              )
                              )
v.                            )        No. 2:14-cv-02178-SHM
                              )
CAROLYN W. COLVIN, ACTING     )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                              )
      Defendant.              )

## ORDER

Before the Court is Plaintiff Laurel Dianne Burnette's ap-
peal from a final decision of the Commissioner of Social Securi-
ty ("Commissioner") denying Burnette's application for
disability-insurance benefits under Title II of the Social Secu-
rity Act (the "Act"), 42 U.S.C. § 401–34. For the following
reasons, the Commissioner's decision is AFFIRMED.

## I.    BACKGROUND

On May 11, 2011, Burnette applied for disability-insurance
benefits under Title II of the Act. (R. at P212.[1]) Burnette al-
leged a "disabling condition" beginning on February 18, 2011.

---

[1] References to "R." are to the certified administrative record
in this case submitted by the Commissioner together with the
Commissioner's Answer. (See ECF Nos. 12-1, 12-2, 12-3.) Page
references to record cites will use the ECF-assigned PageID for
the cited page, and will appear in the format "P___".

(Id.)  The Social Security Administration ("SSA") denied Burnette's application on initial review and on reconsideration. (Id. at P143 (initial determination); id. at P144 (reconsideration).)

At Burnette's request, an Administrative Law Judge ("ALJ") held a hearing about Burnette's application on September 20, 2012.  (Id. at P105.)  On October 23, 2012, the ALJ issued a decision denying Burnette's benefits request.  (Id. at P89–P99.) The ALJ found that Burnette was not disabled because she retained the residual functional capacity ("RFC") to perform past relevant work.  (See, e.g., id. at P99; see also Section II.B infra (discussing sequential analysis).)  On January 14, 2014, the SSA's Appeals Council denied Burnette's request for review. (R. at P34.)  That denial made the ALJ's decision the Commissioner's final decision.  (Id.)

Burnette filed the present action on March 11, 2014. (Compl., ECF No. 1.)  The Commissioner answered Burnette's complaint on June 30, 2014.  (Answer, ECF No. 12.)  On July 1, 2014, the Court entered an Administrative Track Scheduling Order.  (ECF No. 13 ("Scheduling Order").)  The order gave Burnette thirty days to file "a brief in support of the asserted claim," and gave the Commissioner thirty days after that filing to submit a response.  (Id.)  Burnette filed her brief on July 30, 2014.  (Mem. Br. in Supp. of Pl., ECF No. 14 ("Mem.").)  The

Commissioner filed a response on September 2, 2014. (Mem. in Supp. of Comm'r's Decision, ECF No. 19 ("Resp.").) Burnette did not file a reply to the Response, and the deadline for doing so has passed. (Scheduling Order 1.)

## II. STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which the claimant was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria to make the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012). "'Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bowman v. Comm'r of Soc. Sec., Case No. 16-6298, 2017 WL 1065553, at *3 (6th Cir. Mar. 21, 2017) (quoting McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and must "'take into account whatever in the record fairly detracts from its weight.'" Conner v. Comm'r of Soc. Sec., 658 F. App'x 248, 253 (6th Cir. 2016) (quoting Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)). If substantial evidence supports the Commissioner's decision, the court must affirm that decision and "may not 'even inquire whether the record could support a decision the other way.'" Staymate v. Comm'r of Soc. Sec., No. 16-3896, 2017 WL 902136, at *3 (6th Cir. Mar. 7, 2017) (quoting Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)).

The court may not try the case de novo or resolve conflicts in the evidence. Ulman, 693 F.3d at 713 (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Vance v. Comm'r of Soc. Sec., 260 F. App'x 801, 807, 808 (6th Cir. 2008) (citing Bass, 499 F.3d at 509).

**B.  The Five-Step Analysis**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Section 423(d)(2)(A) states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011) (citing 42 U.S.C. § 423(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 683 (6th Cir. 1992)). The claimant has the initial burden to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997)). If she does so, the burden shifts to the Commissioner to show that available employment exists that is compatible with the claimant's disability and background. Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 576 (6th Cir. 2009) (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)).

The Social Security Regulations (the "Regulations") provide a five-step "sequential analysis" governing entitlement to disability-insurance benefits. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be engaged in substantial gainful activi-

ty.  Id. § 404.1520(b).  Second, a finding must be made that the claimant suffers from a severe impairment.  Id. § 404.1520(c). Third, the ALJ must determine whether the impairment meets or equals the severity criteria set forth in the Regulations' Listing of Impairments.  Id. § 404.1520(d).  If the impairment satisfies the criteria for a listed impairment, the claimant is deemed disabled.  Fourth, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the RFC to return to any past relevant work. Id. § 404.1520(f).  If the claimant can return to past relevant work, the claimant is deemed not disabled.  Id.  Fifth, if the claimant is unable to perform past relevant work, the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy.  Id. § 404.1520(g).  If at any point in the sequential analysis it is determined that an individual is not disabled, further review is unnecessary.  Id. § 404.1520(a)(4).

**III. ANALYSIS**

In her Memorandum, Burnette presents the following issues: (1) "[w]hether the defendant's [ALJ] had a legitimate basis upon which to deny disability benefits or whether the [ALJ] was merely arbitrary and capricious and therefore abused his discretion"; (2) "[w]hether the defendant erred by the denial of disability benefits to [Burnette] because of an error of law";

and (3) "[w]hether the defendant erred by the denial of disability benefits to [Burnette] because the decision is not supported by substantial evidence." (Mem. 2.)

These issue statements are vague. It is Burnette's responsibility to point to the specific legal or factual errors in the ALJ's decision for the Court to review.[2] The Memorandum conflates distinct issues, making it difficult to understand Burnette's arguments. Based on its review of the Memorandum, the Court understands Burnette to present the following issues for review:

- **Claim of Error 1:** As a threshold matter, the ALJ "erred when it was found that [Burnette] would not be under a disability for twelve months or more and that there is not substantial evidence to support that position." (Mem. 6.)

- **Claim of Error 2:** At step three of the sequential analysis, the ALJ erred by determining that Burnette's impairments did not meet one or more of

---

[2] Pages 8 through 12 of the Memorandum contain a section entitled "Applicable Law." (Mem. 8.) That section contains numerous paragraphs discussing cases. It has no record citations or applications of law to the facts of this case. The Court cannot and will not search this section to find applicable arguments. United States v. Fowler, 819 F.3d 298, 309 (6th Cir. 2016) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.'") (quoting El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (quoting McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir. 1997)) (alteration in McPherson). To the extent Burnette purports to make arguments in the "Applicable Law" section that are not made elsewhere in the Memorandum, those arguments are deemed waived.

the impairments in the Listing of Impairments. (Id. at 7.)

- **Claim of Error 3:** At step three of the sequential analysis, the ALJ failed to consider Burnette's impairments in combination. (Id. at 3, 6-7.)

- **Claim of Error 4:** At step four of the sequential analysis, the ALJ relied on evidence that was "not competent" -- specifically, expert-witness testimony from a "non examining physician." (Id. at 2.)

- **Claim of Error 5:** At step four of the sequential analysis, the ALJ inappropriately failed to give controlling weight to the opinions of Burnette's treating physicians. (Id. at 3-5, 7.)

- **Claim of Error 6:** At step four of the sequential analysis, the ALJ failed to consider Burnette's testimony about disabling pain appropriately. (Id. at 5-7.)

**A. Claim of Error 1**

Burnette states that the ALJ "erred when it was found that [Burnette] would not be under a disability for twelve months or more and that there is not substantial evidence to support that position." (Id. at 6.) The relevant definition of "disability" is at 42 U.S.C. § 423(d)(1)(A). Disability means "inability to engage in any substantial gainful activity by reason of any med-ically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be ex-pected to last for a continuous period of not less than 12 months." Burnette's argument appears to be that, because the ALJ did not address Burnette's level of impairment 12 months in-

to the future, the ALJ could not conclude that Burnette did not suffer from a § 423(d)(1)(A) disability. The Government does not address this argument. (See generally Resp.)

To the extent Burnette makes a continuous-period argument, that argument fails. The ALJ concluded that Burnette was not disabled "from February 18, 2011, through the date of [the ALJ's] decision" (October 23, 2012). (R. at P99.) That conclusion did not depend on § 423(d)(1)(A)'s continuous-period requirement. It depended on the ALJ's determination that, throughout the stated period, Burnette had been able to engage in substantial gainful activity notwithstanding her impairments. As discussed below, substantial evidence supported the ALJ's determination. How an ALJ must apply the continuous-period requirement is not material.

Claim of Error 1 in the Memorandum is DENIED.

**B. Claims of Error 2 and 3**

Burnette states:

> The [ALJ] and the defendant failed to evaluate the claimant's symptoms under the Multiple Symptom Regulations. The ALJ analyzed each symptom *individually*, but *failed* to analyze the symptoms **in combination**. The Claimant's symptoms clearly equal any one impairment in the Listing of Impairments even though singly each symptom does not meet a listing. Further, the [ALJ] failed to note the deficits suffered by the Claimant as noted in the Listing of Impairments.

(Mem. 6 (emphases in original) (citation omitted).)[3]

This paragraph addresses step three of the sequential analysis, and combines two arguments. The first is that the ALJ considered Burnette's symptoms individually, not in combination. The second is that the ALJ did not consider whether Burnette's symptoms meet or equal the Listing of Impairments' severity criteria.

The combined-symptoms argument fails. The Sixth Circuit has found an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet a listing, the ALJ

---

[3] Burnette also states:

> The problem is that the ALJ did not address all of the symptoms in totality (together) and thus did *not* look at the record *as a whole*, but **paid only lip service** to the evidence. A claimant's *total* medical condition and history must be considered in combination and not fragmentized in deciding whether the claimant has sustained the burden of proof, and the [ALJ] **must** *give* **more** *than* "*lip service*" to the requirement that all impairments be considered in combination. The [ALJ] **clearly gave only "lip service"** to the requirement that all impairments be considered in combination. The [ALJ] thought it sufficient *to just mention* that he looked at all of the impairments. As noted above**, the 6th Circuit Court of Appeals has made it clear** that it is *NOT* sufficient to just state that all impairments have been examined, but that some itemization must be shown, otherwise it is just "lip service."

(Mem. 3 (emphases in original) (citations omitted).)

10

referred to the claimant's "impairments" as insufficiently severe to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the entire record, and the ALJ's decision discussed the claimant's impairments individually. Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 591–92 (6th Cir. 1987); see also Simons v. Barnhart, 114 F. App'x 727, 734 (6th Cir. 2004) (citing Gooch). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." Gooch, 833 F.2d at 592. The Sixth Circuit has also found that the ALJ properly considered the combined effects of a claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990).

The ALJ in this case referred to his obligation to consider all of Burnette's impairments. (R. at P90.) He noted that, at step three, he had to consider whether Burnette's impairments "or combination of impairments" met a listing. (Id.; see also id. at P92.) The step-three analysis specifically refers to Burnette's "combination of impairments" and the "severity of [Burnette's] impairments." (Id. at P92.) The ALJ's decision demonstrates consideration of Burnette's impairments in combination.

Burnette's argument that the ALJ failed to consider the Listing of Impairments also fails. The Government responds that, "[d]espite her burden to demonstrate that she meets or equals a listing, [Burnette] makes no effort to name even a single listing she believes she meets." (Resp. 5.) The Government's argument is well taken.

The Sixth Circuit has discussed an ALJ's duties when a claimant argues that her impairments meet a listing:

> The relevant Social Security regulations require the ALJ to find a claimant disabled if he meets a listing. Yet, neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." The ALJ should discuss the relevant listing, however, where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing.
>
> A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a "substantial question" as to whether he has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.

Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432–33 (6th Cir. 2014) (citations omitted); see also Dew v. Comm'r of Soc. Sec., No. 15-CV-12660, 2017 WL 744238, at *2 (E.D. Mich.

Feb. 27, 2017) (reciting similar standards and citing <u>Smith-Johnson</u>).

Burnette points to no specific evidence showing that she reasonably could meet or equal every requirement of a listing. Indeed, Burnette does not state any particular listing that she considers relevant. She appears to invite the Court to search the record and the Listings of Impairment for her. That is not the Court's role. <u>Fowler</u>, 819 F.3d at 309.

Claims of Error 2 and 3 in the Memorandum are DENIED.

**C. Claims of Error 4 and 5**

Claims of Error 4 and 5 point to alleged errors in the ALJ's handling of medical evidence. Claim of Error 4 is that, during the fourth step of the sequential analysis,[4] the ALJ re-lied on certain evidence that was "not competent." (Mem. 2.) The evidence at issue is that of "an ***expert witness*** whose testi-mony was as a nonexamining physician," with "physician" being singular. (<u>Id.</u> (emphasis in original) (citing R. at P97).)

---

[4] Burnette states, "An attempt was made by the defendant ALJ to discuss the evidence and use that evidence to show that [Bur-nette] is able to perform a *light* exertional job in the regional economy[.]" (Mem. 2 (emphasis in original) (citing R. at P93).) The "regional economy" reference suggests a dispute about the ALJ's handling of the fifth step of the sequential analysis. The record is clear, however, that at P93 the ALJ was consider-ing the fourth step of the sequential analysis (whether Burnette had the RFC to return to past relevant work). (R. at P93-99.) Because the ALJ determined that Burnette could perform past rel-evant work, the ALJ never reached the fifth-step question of whether Burnette could perform alternative work.

It is unclear to whom Burnette is referring. (See R. at P97.) At P97, the ALJ states that he "gave substantial weight to the opinions of the State agency medical consultants," with "consultants" being plural. (Id.) The ALJ "concluded that the opinions of the medical consultants should be afforded appropriate weight as highly qualified, non-examining medical sources." (Id.) The consultants appear to be Dr. Victor O'Bryan and Dr. Thomas Thrush. (Id. at P96 (identifying Thrush as "state agency medical reviewer"; id. at P97 (identifying O'Bryan as "state agency reviewer").) The Court understands Burnette to refer to O'Bryan and Thrush. Burnette's competence argument is apparently that the ALJ should not have considered the views of O'Bryan and Thrush because they had "never seen the plaintiff and [had] never spoken with the plaintiff's physicians." (Mem. 3–4, 7.)

That argument fails. The Commissioner's regulations governing disability determinations instruct that, "[r]egardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]." 20 C.F.R. § 416.927(c). The reports of O'Bryan and Thrush were medical opinions. (R. at P609–22 (assessment by O'Bryan); id. at P623–32 (assessment by Thrush).) That O'Bryan and Thrush did not personally see Burnette does not make their evidence "not competent."

Claim of Error 5 contends that the ALJ gave too little weight to the opinions of Burnette's treating physicians. Bur-

nette argues that the ALJ inappropriately relied on the opinions of nonexamining doctors. (Mem. 2-4.) Burnette contends that "the ALJ violated a basic premise of law that you cannot favor the opinion of the one shot or non examining physicians over the opinion of the treating physicians." (Id. at 4.) Burnette also states that the ALJ inappropriately "ignore[d]" the evaluations of Burnette's treating physicians:

> [T]he ALJ ignores the residual functional evaluation proffered by the treating physician of the claimant. That finding is a reach in and of itself. The ALJ clearly avoids and ignores the [treating-physician] evaluations of Dr. [Ramesh] Gupta and Dr. [Ying] Xu that the claimant cannot *sit for more than 2 hours a day or stand for a like amount of time*. That the claimant can maintain concentration and persistence during an entire work day when she cannot sit for more than 2 hours a day is just not believable and is *rampant speculation* by the ALJ and has **no** basis in fact or law, and cannot under any circumstance be implied by the facts by the trier of fact. That is reversible error.

(Id. at 4-5 (emphasis in original) (citations omitted).) The Government responds that "substantial evidence supports the ALJ's rejection of [the] two treating physicians." (Resp. 9; see also id. at 9-14.)

The Sixth Circuit has discussed the standards for assessing medical evidence when making disability determinations:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source

15

who has not performed an examination (a
"nonexamining source"), and an opinion from
a medical source who regularly treats the
claimant (a "treating source") is afforded
more weight than that from a source who has
examined the claimant but does not have an
ongoing treatment relationship (a "nontreat-
ing source").  In other words, "[t]he regu-
lations provide progressively more rigorous
tests for weighing opinions as the ties be-
tween the source of the opinion and the in-
dividual become weaker."

The source of the opinion therefore dictates
the process by which the Commissioner ac-
cords it weight.  Treating-source opinions
must be given "controlling weight" if two
conditions are met: (1) the opinion "is
well-supported by medically acceptable clin-
ical and laboratory diagnostic techniques";
and (2) the opinion "is not inconsistent
with the other substantial evidence in [the]
case record."  If the Commissioner does not
give a treating-source opinion controlling
weight, then the opinion is weighed based on
the length, frequency, nature, and extent of
the treatment relationship, as well as the
treating source's area of specialty and the
degree to which the opinion is consistent
with the record as a whole and is supported
by relevant evidence.

The Commissioner is required to provide
"good reasons" for discounting the weight
given to a treating-source opinion.  These
reasons must be "supported by the evidence
in the case record, and must be sufficiently
specific to make clear to any subsequent re-
viewers the weight the adjudicator gave to
the treating source's medical opinion and
the reasons for that weight."  This proce-
dural requirement "ensures that the ALJ ap-
plies the treating physician rule and
permits meaningful review of the ALJ's ap-
plication of the rule."

On the other hand, opinions from nontreating
and nonexamining sources are never assessed

for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375–76 (6th Cir. 2013) (citations omitted).

The ALJ did not give controlling weight to the opinions of Xu or Gupta, deciding that, for the most part, they had "little evidentiary weight." (R. at P98.) The relevant discussion is as follows:

> After the hearing, claimant submitted additional medical records and two medical source statements. Claimant visited Dr. Ying Xu . . . on May 1, 2012 . . . . Claimant was diagnosed with peripheral neuropathy, fibromyalgia, and chronic sinusitis. In an accompanying medical assessment, Dr. Xu indicated claimant had unspecified limitations of lifting and carrying; that she could stand and walk a total of "0" (zero) hours in an eight-hour day; no limitations on sitting; never engage in postural activities; and had unspecified limitations on reaching, handling, feeling, and push/pull. [sic] Dr. Xu indicated claimant had no limitations in seeing and no environmental limitations. He further indicated that the limitations noted in the assessment began "2008-2009[.]"

> Claimant also submitted a medical source statement signed by a Dr. Ramesh C. Gupta on September 6, 2012. Dr. Gupta indicated claimant could occasionally lift 2-3 pounds; stand/walk two hours in an eight-hour day;

sit two hours in an eight-hour day; never
engage in postural activities; that claimant
had unspecified limitations on reaching,
handling, push/pull, and seeing; that claim-
ant had no limitations in feeling, speaking,
or hearing; that claimant had certain envi-
ronmental limitations. [sic] Dr. Gupta in-
dicated the limitations in his opinion began
in November 2010.

Dr. Xu's opinion that claimant has no visual
limitations is accepted as consistent with
the record as a whole. However, the remain-
der of Dr. Xu's opinion and Dr. Gupta's
opinion are given little evidentiary weight.
Claimant testified that she continued to
work for the Girl Scouts as an administra-
tive assistant until February 17, 2011. She
testified she had to lift up to 50 pounds in
her job and sit most of the day. The voca-
tional expert testified the administrative
assistant job is normally performed at the
light level of exertion. Claimant's earn-
ings reflect substantial gainful activity at
least though the first quarter of 2011. The
fact that claimant was able to continue in
her work as an administrative assistant
through the middle of February 2011, and by
her own testimony, lift up to 50 lbs and sit
most of the day, is sufficient grounds to
discount either opinion. Dr. Xu's opinion
is also discounted because his treatment
notes do not reflect the severity of the
limitations he assessed, and his opinion is
not consistent with the record as a whole.
Dr. Gupta's opinion is further discounted
because it is not entirely clear that he had
recently examined claimant, and his opinion
is not consistent with the record as a
whole.

(Id. at P97–98 (citations omitted).)

The ALJ's decision not to give the opinions of Gupta and Xu

controlling weight was appropriate only if (1) the doctors were

not treating sources, or (2) their opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or were inconsistent with substantial record evidence. Gayheart, 710 F.3d at 375–76.

Xu was a treating source. Burnette testified that Xu was her primary-care physician and her "main doctor on [her] fibromyalgia and any other things that I have." (R. at P121.) Burnette also testified that she saw Xu "probably on a monthly basis." (Id.) The record is unclear how long Xu had been treating Burnette, but the Commissioner does not dispute that Xu is a treating source. (See Resp. 11–13.)

The parties dispute whether Gupta was a treating source. Under Sixth Circuit precedent, "[a] physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 273 (6th Cir. 2015) (quoting 20 C.F.R. § 404.1502) (alteration in Reeves).

Burnette testified that she saw Gupta "for [her] arthritis," and that Gupta had written her prescriptions for handling arthritis-related pain. (R. at P122–23, P131.) The record does not establish how long Burnette had been seeing Dr. Gupta. The Commissioner states that there are no "treatment notes from

19

[Gupta] in the certified administrative record." (Resp. 13.) The Commissioner also states that, "[i]n her brief before the Court, [Burnette] does not directly cite any treatment records from [Gupta]." (Id.)

On this record, it is unclear whether Gupta is a treating source. The Court will assume without deciding that he is, because even if so, Gupta's opinions do not merit controlling weight.

The ALJ's discussion of Gupta's and Xu's opinions does not dispute that medically acceptable techniques support those opinions. (R. at P97–98.) For the ALJ to deny Gupta's and Xu's opinions controlling weight, they had to be inconsistent with substantial evidence in the record. They were.

The ALJ was required to provide "good reasons" to discount treating-source opinions. He relied on Burnette's job-history testimony. (R. at P98; see also id. at P116–17 (hearing testimony about Burnette's employment with Girl Scouts between 2004 and 2011).) That testimony is substantial evidence of her ability to work during periods about which Gupta and Xu opined. Bowman, 2017 WL 1065553, at *3 (evidence is "substantial" if it is "such as a reasonable mind might accept as adequate to support a conclusion"). Because Gupta's and Xu's opinions are inconsistent with that substantial evidence, it was not improper for the ALJ to deny those opinions controlling weight.

Notwithstanding his decision to deny Gupta's and Xu's opinions controlling weight, the ALJ had to weigh their opinions based on the length, frequency, nature, and extent of the treatment relationship, as well as Gupta's and Xu's specialties and the degree to which their opinions were consistent with the record as a whole and supported by relevant evidence. 20 C.F.R. § 404.1527(c).

The ALJ provided specific reasons for giving Gupta's and Xu's opinions less weight than he gave to the opinions of the state-agency medical reviewers. Xu's opinion was discounted because it was inconsistent with Burnette's testimony and because "his treatment notes do not reflect the severity of the limitations he assessed." (R. at P98; see also id. at P662 (form completed by Xu).) Gupta's opinion was discounted because it was inconsistent with Burnette's testimony and "because it [was] not entirely clear that he had recently examined claimant." (R. at P98; see also id. at P663-64 (form completed by Gupta).)

The ALJ did not avoid or ignore Gupta's or Xu's evaluations. He discussed them and explained why he gave them little weight. There was substantial evidence supporting that decision: Gupta's and Xu's opinions conflicted with Burnette's own testimony. Given that substantial evidence, the Court will not second-guess the ALJ's determination.

Claims of Error 4 and 5 in the Memorandum are DENIED.

**D.    Claim of Error 6**

The Memorandum contains the following passage addressing evidence of pain:

> A claimant need ***not*** establish the severity of disabling pain by *objective* evidence. The Secretary *must* give appropriate weight to the lay testimony regarding pain if that testimony is consistent with the medical *evidence* and may **not** reject a claim of disabling pain *solely because the degree of pain is not objectively established*. The ALJ gave lip service to this requirement . . . , especially in regard to . . . neck and shoulder pain.

> An [ALJ] ***must give reasons*** for *crediting or rejecting* a ***claimant's*** *testimony*. This clearly was not done by the ALJ. The ALJ did not do so.

> A claimant need not prove the exact cause of a symptom particularly where the claimant's impairment is not fully understood. In a case like the instant case, pain[,] such as the neck and shoulder pain of the claimant, is not always understood. That is, however, what the ALJ required the claimant to prove.

> Clearly, there was no basis for the Defendant's denial. Speculation, lip service, and obfuscation are not valid bases.

(Mem. 5 (emphases in original) (citations omitted).)

This passage makes numerous arguments. Several are baseless. The ALJ did not reject Burnette's claim of disabling pain "solely because the degree of pain [was] not objectively established." The ALJ determined, based on the relevant factors in

20 C.F.R. § 404.1529(c)(3),[5] that Burnette's "statements concern-ing the intensity, persistence, and limiting effects of [her pain] are not credible to the extent they are inconsistent" with the ALJ's determination of Burnette's RFC. (R. at P95.) The ALJ did not require Burnette to "prove the exact cause" of her pain, or to "establish the severity of disabling pain by objec-tive evidence."

The argument that the ALJ failed to give reasons for re-jecting Burnette's testimony is not well taken. The Sixth Cir-cuit has discussed the criteria for assessing pain evidence as follows:

> [T]here is a two-part test to evaluate a claimant's assertion of disability due to pain. A claimant must first establish an underlying medical condition. Then, he must establish either that objective medical evi-dence confirms the extent of the alleged pain or that the objective medical evidence could reasonably be expected to produce the pain. In evaluating claims of pain that cannot be shown through objective medical evidence, the ALJ is to "consider [a claim-ant's] statements about the intensity, per-sistence, and limiting effects of [his]

---

[5] Various amendments to 20 C.F.R. § 404.1529(c)(3) became effec-tive on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416) (estab-lishing amendments' effective date). Because the ALJ rendered his decision before March 27, 2017, he used the earlier version of § 404.1529(c)(3). The Court reviews the ALJ's decision under the prior version of the regulation. Cf. Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regu-lations.").

> symptoms." "In determining the credibility
> of the individual's statements, the adjudi-
> cator must consider the entire case record,
> including the objective medical evidence,
> the individual's own statements about symp-
> toms, statements and other information pro-
> vided by treating or examining physicians or
> psychologists and other persons about the
> symptoms and how they affect the individual,
> and any other relevant evidence in the case
> record."

Massey v. Comm'r of Soc. Sec., 409 F. App'x 917, 921 (6th Cir.
2011) (citations omitted).

The ALJ agreed that Burnette's "medically determinable im-
pairments could reasonably be expected to cause" some pain, but
did not find credible her claim that her pain was disabling.
(R. at P95.) Because Burnette's claims of pain were not shown
"through objective medical evidence," the ALJ was required to
consider Burnette's statements about the pain and to make a
credibility determination. That is what the ALJ did. (See gen-
erally id. at P93–98.)

The ALJ's discussion meets the Massey standards. The ALJ
considered the objective medical evidence (id. at P95–98), Bur-
nette's statements about her symptoms (id. at P94–95), and medi-
cal experts' statements about Burnette's symptoms and how they
affected her (id. at P95–98). Burnette points to nothing the
ALJ failed to consider as part of his credibility determination.
(See generally Mem.) On this record, there is substantial evi-

24

dence to support the ALJ's determination that Burnette's pain was not disabling.

Claim of Error 6 in the Memorandum is DENIED.

## IV. CONCLUSION

Each of the Claims of Error in the Burnette Memorandum is DENIED. The Commissioner's determination that Burnette is not disabled within the meaning of 42 U.S.C. § 423(d), because she has the residual functional capacity to perform past relevant work, is AFFIRMED.

So ordered this 28th day of March, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE